IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| DAVID FREDERICK, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CV 113-176 |
| | * | |
| DEMOND BROWN, individually and | * | |
| in his capacity as an officer | * | |
| with the Augusta-Richmond | * | |
| County Sheriff's Department, | * | |
| et al., | * | |
| | * | |
| Defendants. | * | |

O R D E R

In 2008, the Augusta-Richmond County Commission enacted a juvenile curfew ordinance ("the Ordinance") that makes it unlawful for "any minor under the age of eighteen (18) years to loiter, wander, stroll or play in or upon the public streets, highways, roads, alleys, parks, playgrounds or other public grounds, public places, public buildings, places of amusement, eating places, vacant lots or any other place in Augusta-Richmond County, unsupervised by an adult" between the hours of midnight and 5:00 AM on Fridays and Saturdays, subject to certain exceptions. AUGUSTA-RICHMOND COUNTY CODE § 3—1-2. Among those exceptions is "[w]hen a minor is accompanied by his or her parent, guardian or other adult person having the lawful care and custody of the minor." Id. § 3-1-2(a). The Ordinance also

1

makes it "unlawful for the parent, guardian, or other person having custody or control of any child under the age of eighteen (18) to permit, or by insufficient control, to allow, such a child to be in or upon the public streets" during the controlled hours. Id. § 3-1-3.

Plaintiff David Frederick alleges the County and eight named officers of its sheriff's department, among others unnamed, deprived him of his First, Fourth, Fifth, Thirteenth, and Fourteenth Amendment rights when he was arrested, purportedly with excessive force, for violating the Ordinance, and seeks to have the Ordinance declared unconstitutional on its face and enjoined because of asserted vagueness and overbreadth. On April 1, 2015, this Court held a hearing to determine whether Mr. Frederick's facial challenge to the Ordinance is justiciable given that Mr. Frederick, the sole plaintiff in this case, turned eighteen approximately two years *prior* to filing this suit (see Compl., Doc. 1, ¶ 9).

Thus, at this stage the Court is left only with the pleadings, supplemented by Mr. Frederick's brief — which, the Court notes, is bereft of any argument in support of his invocation of federal jurisdiction or any reference to the facts of his case — from which the Court is asked to pass on the validity of a local law. As the Court cannot determine from the evidence before it whether Mr. Frederick, now 21-years-old,

suffered or imminently will suffer an injury under the Ordinance sufficient to ensure that the Court would not be rendering an advisory opinion, the Court declines to address the merits of Mr. Frederick's facial challenge at this time, subject to certain holdings herein.

## I. BACKGROUND

According to the Complaint, Mr. Frederick received permission from his mother to attend Augusta, Georgia's First Friday event in June 2010 with his cousin, Brad Tucker, who was over 18-years-old. (Compl. ¶ 38.) Mr. Frederick was 16 on the night of the incident. (Id. ¶ 36.) While walking on Broad Street after midnight, thereby triggering the Ordinance, several officers confronted Mr. Frederick, purportedly because he threw something on the ground and was part of a group of "black male subjects" who were "yelling and chanting." (Id. ¶¶ 41, 46, 55.) After asking Mr. Frederick's age, Officer Demond Brown searched Mr. Frederick's person, placed him in handcuffs, and informed him that he was going to jail for violating the curfew ordinance. (Id. ¶¶ 56, 57.) None of the officers on the scene asked Mr. Frederick whether he was accompanied by an adult or supervised. (Id. ¶ 45, 58, 59.) Mr. Tucker informed Officer Brown that he was an adult and was "in charge of [Mr. Frederick]," but Officer Brown refused to listen. (Id. ¶¶ 60, 61.) Another officer then grabbed Mr. Tucker's wrist and

3

threatened him with jail. (Id. ¶ 63.) On the way to the police car, while in Officer Rachel Hardin's custody, "one or more Defendants" "tackled" Mr. Frederick to the ground and then punched, kicked, and hit him. (Id. ¶¶ 69, 71-76, 79, 85.) Mr. Frederick thereafter spent time in an outdoor holding area (id. ¶ 87), but it is unclear whether he was issued a citation of any sort or was convicted of any misconduct.

Based on these facts, the Complaint alleges, *inter alia*, that the Ordinance, "in its entirety" "is unconstitutional on its face or was unconstitutionally applied and was the cause of the illegal seizure and arrest." (Id. ¶¶ 106, 115.) Mr. Frederick claims the Ordinance

- is "unconstitutionally vague by use of the term 'supervise'" (id. ¶ 107);

- is "arbitrary and capricious and deprives citizens such as the Plaintiff and family members and other adults of due process and equal protection" (id. ¶ 108);

- "does not give Plaintiff fair notice of how he is to behave, so that the 'adult' 'supervising' can be said to be adequately supervising to ward off the limiting effect of the curfew" (id. ¶ 109);

- "gives officers unlimited discretion to determine, without fair warning to citizens, that an adult is not properly 'supervising' the associated minor" (id. ¶ 111);

- "is too vague" and "does not give citizens reasonable notice of how to protect their

4

freedoms of association, and familial relationships" (id. ¶ 112);

- is "overly broad, and covers all activities protected by the First Amendment and not triggering probable cause" (id. ¶ 113); and

- is "overly broad, is unconstitutional and it caused the unlawful arrest of Plaintiff" (id. ¶ 114).

Mr. Frederick seeks compensatory, special, and punitive damages, as well as "[d]amages for injuries caused by deprivation of Constitutional rights." (Id. at 24 ¶¶ a, b, d, e.) He also requests "[i]njunctive and declaratory relief finding the [O]rdinance unconstitutional on it its [sic] face or that its application was unconstitutional, and order prospective relive [sic] against whoever is the Sheriff and Commission to comply with the constitution and laws of the State of Georgia, to prohibit arbitrary deprivation of freedoms guaranteed all without regard to race, or in violation of due process and equal protection." (Id. at 24, ¶ g.) More specifically, for instance, he urges the Court to

- "order that before a minor is seized or arrested for possible violation of the curfew, that the Defendants be able to demonstrate by objective circumstances that the officer had probable cause to believe that the person seized is a minor, and that the adult had notice that the minor was violating the law, and the adult refused or failed to stop the violation of the law by the minor" (Id. ¶ 124), and

5

- "declare the Defendant County liable for having caused the unlawful arrest by the ordinance with vague terms 'supervised' by an 'adult'" (Id. ¶ 125).

In response, Defendants filed three motions to dismiss Mr. Frederick's Complaint in its entirety because it is a model shotgun pleading and fails to state a claim under the standards set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 554 (2007). (See Docs. 12, 21, 35.) Defendants also raised the defenses of qualified, official, and sovereign immunity. (Id.)

On March 25, 2014, the Court granted the parties' consent motion to stay all other proceedings in this matter, including resolution of Defendants' motions to dismiss, pending "litigation" of Mr. Frederick's facial constitutional challenge. (Doc. 33; see also Doc. 31.) Augusta-Richmond County dedicated approximately two paragraphs of its Motion to Dismiss — filed prior to the stay — to analysis of Mr. Frederick's arguments under the First Amendment. (See Doc 21 at 7-8.) On April 1, 2014, Mr. Frederick filed a 24-page brief propounding a broad challenge to the constitutionality of the Ordinance on the grounds that it (1) is vague on its face; (2) is overbroad on its face; (3) violates minors' fundamental right to move freely and to travel; and (4) violates the fundamental right of parents to rear their children without undue government interference.

6

(See Doc. 34.) The County declined to reply. The parties thus took no further action after April 1, 2014: they did not engage in any discovery specific to the facial challenge, nor did they file any motions upon which the Court could act. Upon undertaking a review of the docket and Mr. Frederick's brief, the Court inquired *sua sponte* into whether the facial challenge to the Ordinance is justiciable — more specifically, whether Mr. Frederick has standing under each of the theories of invalidation and whether his claims are moot because he turned eighteen approximately two years *prior* to filing this suit. (Doc. 44.) With the benefit of oral argument, the Court now resolves those questions.

## II. DISCUSSION

"A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises." Amnesty Int'l, USA v. Battle, 559 F.3d 1170, 1176-77 (11th Cir. 2009)(quoting Johansen v. Combustion Eng'g, Inc., 170 F.3d 1320, 1328 n.4 (11th Cir. 1999)). "Standing is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." Bochese v. Town of Ponce Inlet, 405 F.3d 964, 974 (11th Cir. 2005); see also Austin & Laurato, P.A. v. United States, 539 F. App'x 957, 960 (11th Cir. 2013) ("An essential prerequisite to a federal

7

court's power to entertain a suit is an Article III case or controversy."), cert. denied, 134 S. Ct. 1311 (2014).

The party invoking federal jurisdiction — in this case, Mr. Frederick — bears the burden of establishing standing. Bischoff v. Osceola Cnty., Fla., 222 F.3d 874, 878 (11th Cir. 2000) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)). "Each element of standing must be supported in the same manner as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Id. Thus, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." Lujan, 504 U.S. at 561; see also Bischoff, 222 F.3d at 878 (11th Cir. 2000) ("[W]hen standing becomes an issue on a motion to dismiss, general factual allegations of injury resulting from the defendant's conduct may be sufficient to show standing.") When standing remains relevant at the point of deciding the merits, however, a plaintiff can no longer rest on mere allegations. Bischoff, 222 F.3d at 878 (citing Lujan, 504 U.S. at 561). "A district court *cannot* decide disputed factual questions or make findings of credibility essential to the

question of standing on the paper record alone." Id. at 879 (emphasis in original).

"Mootness, like standing, raises [a] basic question of jurisdiction that cannot be waived and goes to the very heart of the 'case or controversy' requirement of Article III. At least in this context, therefore, questions of mootness [also] ought to be resolved first." Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health & Rehab. Servs., 225 F.3d 1208, 1227 n.14 (11th Cir. 2000) (emphasis added). "It is well settled that at the time a plaintiff brings suit he must have standing to prosecute his claim; he must have a 'personal stake' in the outcome of the litigation." Tucker v. Phyfer, 819 F.2d 1030, 1033 (11th Cir. 1987)(citing City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983) and United States Parole Comm'n v. Geraghty, 445 U.S. 388, 396-97 (1980)); see also Johnson v. City of Opelousas, 658 F.2d 1065, 1068 (5th Cir. 1981). This assures "concrete adverseness which sharpens the presentation of issues necessary for the proper resolution of constitutional questions." Lyons, 461 U.S. at 101 (quoting Baker v. Carr, 369 U.S. 186, 204 (1962)). "The mootness doctrine requires that the plaintiff's controversy remain live *throughout* the litigation; once the controversy ceases to exist, the court must dismiss the cause for want of jurisdiction." Tucker, 819 F.2d at 1033 (emphasis added)(citing Aetna Life Ins. Co. v. Haworth, 300 U.S.

9

227, 239-40 57 (1937) and Church of Scientology Flag Serv. Org. v. City of Clearwater, 777 F.2d 598, 604 (11th Cir. 1985)). "The foregoing principles apply to *every claim* the plaintiff presents in his complaint." Id. (emphasis added).

Mr. Frederick is the sole plaintiff in this case. He seeks monetary damages for himself, as well as declaratory relief — i.e., a judgment that the Ordinance as written *per se* violates various constitutional rights — and injunctive relief against enforcement of the Ordinance. (See Compl. at 24, ¶¶ a, b, d, e, g.) Mr. Frederick's claims for declaratory and injunctive relief, however, were moot at the time he filed suit: at nearly 20-years-old, he was no longer threatened by the prohibitions of the Ordinance or the consequences of its violation. Mr. Frederick himself will be unaffected by any declaration of invalidity. The Court thus **DISMISSES AS MOOT** Mr. Frederick's personal claims for declaratory and injunctive relief,[1] notwithstanding that he *may* have a live claim for monetary damages.[2] Lyons, 461 U.S. at 105-06, 111 (finding the

---

[1] In his brief, Mr. Frederick claims the Ordinance is facially invalid because it violates parents' fundamental right, secured by the Fourteenth Amendment, to rear their children as they see fit. (Pl.'s Br. at 23-24.) Although this claim is not *moot* based on Mr. Frederick's coming of age, Mr. Frederick lacks standing to bring it because he cannot satisfy the injury-in-fact prong described infra. There is no allegation that Mr. Frederick is a parent. Moreover, Mr. Frederick's parents are not parties to the suit, and even if they were, there is no indication that they would still be subject to liability for *other minor children*. The Court thus **DISMISSES** Mr. Frederick's facial challenge on Fourteenth Amendment grounds for want of jurisdiction.

[2] Mr. Frederick's First Amendment damages claim is not presently under review, and thus the Court neither opines on whether it has been adequately

10

plaintiff's pending damages suit did not afford him Article III standing to seek an injunction because such a remedy is "unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again")); Craig v. Boren, 429 U.S. 190, 192-93 & n.2 (1976) (finding, in a case asserting a gender-based equal protection challenge to a statute prohibiting the sale of 3.2 percent beer to males under the age of 21 and to females under the age of 18, that the claims for declaratory *and* injunctive relief were moot after appellant attained the age of 21 and noting that appellant did not seek class certification)); Golden v. Zwickler, 394 U.S. 103, 108-09 (1969) (finding no controversy of "sufficient immediacy and reality" existed to warrant relief under the Declaratory Judgment Act against a New York statute prohibiting anonymous handbills directly pertaining to election campaigns because of "the fact that it was most unlikely that the Congressman would again be a candidate for Congress" after taking office as a state Supreme Court Justice); Tucker, 819 F.2d at 1034 (noting "Lyons stands for the proposition that a plaintiff who has standing to bring a damages claim does not automatically have standing to litigate a claim for injunctive relief arising out of the same set of operative facts" and

---

pled nor addresses its merits, especially as Mr. Frederick's Complaint in its entirety is subject to three pending motions to dismiss.

"[A]rticle III's command that a plaintiff have standing to assert his claim clearly mandates more than that the plaintiff and the defendant have a dispute over *something*; it means the plaintiff and the defendant must have a justiciable dispute over the *specific claim* the plaintiff asserts")(emphasis in original); see also Ross v. Reed, 719 F.2d 689, 694 (4th Cir. 1983) (finding prisoner's claim for declaratory relief moot because his release from custody and "lack of class certification demonstrate[d] the absence of 'a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment'" (citing Zwickler, 394 U.S. at 108)).

During the hearing, Mr. Frederick asserted that the controversy in this case remains live because, as an adult, he is subject to punishment under § 3-1-3 of the Ordinance if he permits a minor he supervises to violate § 3-1-2 and such punishment will chill the exercise of his own First Amendment rights. (FTR Recording System ("FTR") at 10:01:40; 10:25:55; 10:45:46.) In this regard, Mr. Frederick appears to express intent to assert a claim akin to a pre-enforcement challenge. Notwithstanding the fact that Mr. Frederick provides no explanation as to how punishment under the section of the Ordinance that governs parents, guardians, and "supervising adults" would permit him to revive moot challenges to the

separate provision regulating minors' conduct, there are absolutely no allegations in the Complaint that can be construed to support the theory that Mr. Frederick, who apparently does not live in Augusta-Richmond County or its immediate vicinity, *may* visit some day and *may* want to take a minor relative or friend to a *future* First Friday event at which he *could* be subject to liability for failure to control or supervise *if* law enforcement engaged in a sweep and *if* law enforcement stopped him or the minor he accompanied. (See FTR at 10:24:12; 10:25:34.) "[S]peculative or imaginary threats will not confer standing." White's Place, Inc. v. Glover, 222 F.3d 1327, 1329 (11th Cir. 2000)(citing United Public Workers of Am. (C.I.O.) v. Mitchell, 330 U.S. 75, 89 (1947) and Leverett v. City of Pinellas Park, 775 F.2d 1536, 1538 (11th Cir. 1985)); see also Hallandale v. Prof'l Fire Fighters, 922 F.2d 756, 761 (11th Cir. 1991) (citing Laird v. Tatum, 408 U.S. 1, 13-14 (1972) for the proposition that facial challenges under the First Amendment are not justiciable where injuries alleged are too speculative).

Mr. Frederick further asserted during the hearing that this case meets the requirements for application of the "capable of repetition but evading review" exception to the mootness doctrine. (FTR at 10:24:33.) In Sonsa v. Iowa, the Supreme Court held that in the absence of a class action, the "capable of repetition, yet evading review" doctrine is limited to the

13

situation where "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, *and* (2) there [is] a reasonable expectation that the *same complaining party* would be subjected to the *same action* again." Weinstein v. Bradford, 423 U.S. 147, 149 (1975)(per curiam)(emphasis added)(citing Sonsa v. Iowa, 419 U.S. 393 (1975)); see also Davis v. Fed. Election Comm'n, 554 U.S. 724, 735 (2008); Lyons, 461 U.S. at 109 ("[T]he capable-of-repetition doctrine applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality.") The instant case, not a class action, clearly does not satisfy the latter element. Furthermore, the suggestion of Mr. Frederick's counsel that if he had time "to get a client" he could pursue timely injunctive relief seems to indicate that those claims Mr. Frederick failed to preserve for adjudication will *not* perpetually evade review. (FTR at 10:24:54.)

Mr. Frederick also claims that this action is not moot because he includes an overbreadth claim. (See FTR at 10:01:40; 10:05:09; 10:23:16; 10:25:42.) In Broadrick v. Oklahoma, 413 U.S. 601, 610-16 (1973), the Supreme Court relaxed the *prudential* requirements of standing by making a limited exception to the traditional rule that "one to whom application of a statute is constitutional will not be heard to attack the

14

statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional."[3]  Thus, the doctrine allows "[l]itigants . . . to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression."  Broadrick, 413 U.S. at 612.  Even under this more lenient requirement, "it still remains the law that plaintiffs must establish that they have suffered some injury in fact as a result of the defendant's action."  CAMP Legal Def. Fund v. City of Atlanta, 451 F.3d 1257, 1271-72 (11th Cir. 2006) (citing Bischoff, 222 F.3d at 884).

The Court finds several flaws with Mr. Frederick's position that the overbreadth doctrine saves his claims for declaratory and injunctive relief from mootness.  First, based on the allegations in the Complaint, it is far from clear that Mr. Frederick seeks to invoke or protect the rights of third parties rather than merely support his individual claims.  The "facial" and "as-applied" labels that he attaches are not determinative. See Harrell v. The Florida Bar, 608 F.3d 1241, 1259 (11th Cir. 2010) (noting that the Court is not bound by a plaintiff's

---

[3]   United States v. Raines, 362 U.S. 17, 21 (1960) (citing cases); see also Broadrick, 413 U.S. at 610 (citing cases).

15

designation of his challenge as a facial one, but rather it must "look to the complaint to determine what claims, if any, the allegations support"); Jacobs v. The Florida Bar, 50 F.3d 901, 905-06 & n.17 (11th Cir. 1995).

Second, even if Mr. Frederick has adequately *pled* a personal damages claim, he has not *proven* that he suffered a constitutional injury under the Ordinance as applied to his set of facts, a necessary pre-requisite to reaching his claim for facial invalidation on the merits of overbreadth. See CAMP Legal Def. Fund, 451 F.3d at 1271 ("A plaintiff who has established a constitutional injury under a provision of a statute as applied to his set of facts may also bring a facial challenge, under the overbreadth doctrine, to vindicate the rights of others not before the court under that provision."). The facts may be straightforward in this case, but they stand as mere allegations at this stage and also are in dispute. The Officer Defendants deny nearly all the allegations in the Complaint (see Doc. 28) and counsel for the County suggested at the hearing that the Ordinance may not be the cause of Mr. Frederick's arrest as he purportedly engaged in loud, disruptive behavior and was accused of littering. (FTR at 10:12:19.)

Third, even assuming Mr. Frederick does prove that he has *standing* to assert the interests of third parties, standing does not avoid the related problem of *mootness*. Mootness is judged

16

by the actual interests *of the litigants involved*, and this is true in First Amendment cases as well as others. Golden v. Zwickler, 394 U.S. 103, 109-10 (1969). No federal court has jurisdiction "to pronounce any statute . . . void, because irreconcilable with the Constitution, *except as it is called upon to adjudge the legal rights of litigants in actual controversies*." Id. at 110 (citing Liverpool, N.Y. & P.S.S. Co. v. Commissioners, 113 U.S. 33, 39 (1885)).

Consistent with these threshold challenges, the Supreme Court explained in Bd. of Trustees of State Univ. of N.Y. v. Fox that

> [i]t is not the usual judicial practice . . . nor do we consider it generally desirable, to proceed to an overbreadth issue unnecessarily — that is, before it is determined that the statute would be valid as applied. Such a course would convert use of the overbreadth doctrine from a necessary means of vindicating the plaintiff's own right not to be bound by a statute that is unconstitutional into a means of mounting gratuitous wholesale attacks upon state and federal laws. Moreover, the overbreadth question is ordinarily more difficult to resolve than the as-applied, since it requires determination whether the statute's overreach is *substantial,* not only as an absolute matter, but "judged in relation to the statute's plainly legitimate sweep," and therefore requires consideration of many more applications than those immediately before the court. Thus, for reasons relating both to the proper functioning of courts and to their efficiency, the lawfulness of the particular application of the law should ordinarily be decided first.

492 U.S. 469, 484-85 (1989).

Given the litany of contingencies and omissions by the parties in this case, the Court heeds Fox's suggested course. The Court reserves ruling on Mr. Frederick's facial challenge to the breadth of the Ordinance until it addresses the merits of his as-applied claim. At that point, the Court expects the parties to submit within their formal briefs argument on standing *and* mootness as it relates to Mr. Frederick's facial overbreadth challenge if he wishes to re-assert it. The Court warns Mr. Frederick that the overbreadth doctrine does not grant him carte blanche to challenge the entire Ordinance, but only those provisions under which he sustained an injury. See CAMP Legal Def. Fund, 451 F.3d at 1273-74. The Court also notes that in evaluating a facial challenge to a state or local law, a federal court must consider any limiting construction proffered by Georgia courts or the County. Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494 n.5 (1982); Erznoznik v. City of Jacksonville, 422 U.S. 205, 216 (1975) ("[A] state statute should not be deemed facially invalid unless it is not readily subject to a narrowing construction by the state courts."). The parties **SHALL** tailor their argument accordingly.

### III. CONCLUSION

The Court recognizes the peculiar implication of this Order. The parties purportedly intended to streamline this case

18

by testing the constitutionality of the Ordinance up front (FTR at 10:27:56), but failed to see that plan through over the course of a year during which they had the benefit of a stay. At bottom, Mr. Frederick asks this Court to invalidate on the merits the Augusta-Richmond County juvenile curfew ordinance based solely on the pleadings and his brief, which it is unwilling to do. It would be a waste of judicial resources to prescribe such "strong medicine"[4] when questions of consequence remain unanswered, including the Court's jurisdiction to provide the declaratory and injunctive relief Mr. Frederick seeks and, perhaps more importantly, the sufficiency of his Complaint. It is time for this case to move forward.

Based on the foregoing, the Court **DISMISSES AS MOOT** Mr. Frederick's personal claims for declaratory and injunctive relief, with the sole exception of his claim based on the overbreadth doctrine. The Court **DISMISSES** outright for want of jurisdiction his claim for declaratory and injunctive relief based on the Ordinance's alleged interference with parents' fundamental right to rear their children without undue government interference. The Clerk **SHALL** lift the stay.

Mr. Frederick's deadline to respond to the Officer Defendants' Motion to Dismiss (Doc. 35) shall be **14 DAYS** from

---

[4] Broadrick, 413 U.S. at 613 ("Application of the overbreadth doctrine in this manner is, manifestly, strong medicine. It has been employed by the Court sparingly and only as a last resort."); see also United States v. DiPietro, 615 F.3d 1369, 1372-73 (11th Cir. 2010).

19

the date of this Order. Mr. Frederick shall also have **14 DAYS** to respond to the remainder of arguments raised in Augusta-Richmond County's Motion to Dismiss (Doc. 21) that he failed to address in his brief that propounded his facial challenge.

**ORDER ENTERED** at Augusta, Georgia, this 7th day of May, 2015.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA